64 A.3d 478

**MARYLAND ECONOMIC DEVELOPMENT CORPORATION**

v.

**MONTGOMERY COUNTY, Maryland.**

**No. 44, Sept. Term, 2012.**

Court of Appeals of Maryland.

April 9, 2013.

190

192

Diane Festino Schmitt (John Anthony Wolf and Elissa F. Borges of Ober, Kaler, Grimes & Shriver, Baltimore, MD; G. Vann Canada, Jr., Jeffrey P. Reilly, and James J. Demma of Miles & Stockbridge P.C., Rockville, MD), on brief, for Petitioner.

Scott R. Foncannon, Associate Co. Atty. (Marc P. Hansen, Co. Atty., and Karen L. Federman Henry, Division Chief, Office of the Co. Atty., Rockville, MD), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA, JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

ADKINS, J.

In this case, we return to our well-established rules of statutory interpretation, searching for the Legislature's intent

in granting the Maryland Economic Development Corporation ("MEDCO") a tax exemption "from any requirement to pay taxes or assessments on its properties or activities." Md.Code (2008), § 10–129(a) of the Economic Development ("ED") Article. We look first and foremost to the plain meaning of the statute by applying a common-sense perspective of how the words are understood. In so doing, we hold that the plain meaning of ED § 10–129(a) exempts MEDCO from paying the recordation tax at issue in this case. We find nothing in the Tax–Property Article that necessitates a different interpretation, and MEDCO did not waive its tax-exempt status.

## FACTS AND LEGAL PROCEEDINGS

MEDCO is a public corporation formed by the General Assembly in 1984. *See* Chapter 498 of the Acts of 1984. The purpose for creating MEDCO, as expressed in the statute, was to "promote economic development" and "encourage the increase of business activity and commerce and a balanced economy in the State." ED § 10–104(b). To help accomplish this purpose, MEDCO was given the power to "accept loans, grants, or assistance of any kind from ... a private source." ED § 10–115(4). Specifically, MEDCO may "borrow money and issue bonds to finance any part of the cost of a project or for any other corporate purpose of the Corporation." Md. Code (2008, 2012 Cum. Supp.), ED § 10–117(a)(1). MEDCO may then "secure the payment of any portion of the borrowing by pledge of or mortgage or deed of trust on property or revenues of the Corporation." *Id.* § 10–117(a)(2). In using these powers, MEDCO is authorized to "do all things necessary or convenient to carry out the powers expressly granted by this subtitle." Md.Code (2008), ED § 10–115(14).

To further aid in promoting the economic development of the State, MEDCO was given a tax exemption. Specifically, the statute creating MEDCO stated:

(a) *Exemption.*—Except as provided in subsection (b) of this section, the Corporation is exempt from **any require-**

**ment** to pay taxes or assessments on its **properties or activities,** or any revenue from its properties or activities.

(b) *Private entities.*—Property that the Corporation sells or leases to a private entity is subject to State and local real property taxes from the time of the sale or lease. (Emphasis in bold added).

ED § 10–129. Finally, the legislature expressly instructed that MEDCO's statutory scheme is to "be liberally construed to accomplish its purposes." ED § 10–102.

The current litigation arises from MEDCO's involvement in the development of the Shady Grove Technology Development Center. MEDCO originally financed the project in 1998 by issuing bonds. In 2009, MEDCO sought to retire the bonds but still finance the project and arranged to borrow $3,300,000 from PNC Bank ("PNC"). As part of the loan transaction, MEDCO was required to execute a promissory note and provide PNC with a "first priority perfected security interest" in the Shady Grove property. On March 26, 2009, MEDCO executed a Leasehold Deed of Trust, Assignment and Security Agreement with PNC, which required MEDCO to pay all "recording costs and fees and all federal, state, county and . . . other taxes . . . in connection with the recordation or filing of any Loan Documents."

To close the loan transaction, MEDCO presented the deed of trust for recording in Montgomery County, claiming an exemption from the recordation tax based on ED § 10–129(a). The County Transfer Office denied the exemption and required MEDCO to pay $31,450 in recordation tax, which MEDCO paid under protest. MEDCO then filed a Transfer/Recordation Tax Refund Claim. Following an administrative hearing, the Montgomery County Department of Finance denied the claim.

MEDCO appealed to the Maryland Tax Court, but on May 10, 2010 the court denied MEDCO's Petition for Appeal. The Tax Court recognized that the Economic Development Article gave MEDCO the power to borrow money, the ability to secure such borrowing with a deed of trust, and exempted

MEDCO from taxes on its properties and activities. Nevertheless, the Tax Court focused on the Tax–Property ("TP") Article and found that, strictly construing the tax exemption, TP § 12–108 only exempted from the recordation tax instruments of writing that grant a security interest in property to an agency of the State. Section 12–116 of the Tax–Property Article then allows each particular county to choose whether to exempt from the tax, an instrument of writing granting a security interest given from an agency of the State. Montgomery County had not passed such a law, and therefore, strictly construing the tax exemption and resolving any doubt in favor of the County, the appeal was denied.

On December 27, 2010, the Circuit Court for Montgomery County reversed the decision of the Maryland Tax Court and "found that the Maryland Economic Development Corporation is exempt from paying the Recordation Tax on the Deed of Trust." The County appealed, and in a reported opinion, the Court of Special Appeals reversed and vacated the Circuit Court's decision, affirming the judgment of the Maryland Tax Court. *Montgomery Cnty. v. Md. Econ. Dev. Corp.*, 204 Md.App. 282, 285, 40 A.3d 1066, 1068 (2012).

On August 20, 2012, this Court granted a writ of certiorari, *Maryland Economic Development Corp. v. Montgomery County, Maryland*, 427 Md. 606, 50 A.3d 606 (2012), to answer the following question:

Should the Maryland Legislature's determination to exempt MEDCO from "any requirement to pay taxes or assessments on its activities" in order to foster economic growth in the State be countermanded by the decision of Montgomery County to require MEDCO to pay recordation tax on a deed of trust MEDCO granted as part of an economic development project?

We shall hold that the plain meaning of ED § 10–129(a) exempts MEDCO from paying the recordation tax at issue in this case.

## DISCUSSION

 The Maryland Tax Court is an administrative agency, and thus, it "is subject to the same standards of judicial review as other administrative agencies." *Frey v. Comptroller of the Treasury,* 422 Md. 111, 136, 29 A.3d 475, 489 (2011); *see also Colonial Pipeline Co. v. State Dep't of Assessments & Taxation,* 371 Md. 16, 40 n. 15, 806 A.2d 648, 655 n. 15 (2002). In this regard, the standard of review "depends on whether the court is reviewing a question of law, question of fact, or a mixed question of law and fact." *Prince George's Cnty. v. Brown,* 334 Md. 650, 658, 640 A.2d 1142, 1146 (1994). In this case, we are "under no statutory constraints in reversing a Tax Court order which is premised solely upon an erroneous conclusion of law." *Read v. Supervisor of Assessments,* 354 Md. 383, 392, 731 A.2d 868, 872 (1999).

As an initial matter, in this case of statutory interpretation, the parties disagree about which statute—and even which Article of the Code—we should be interpreting. MEDCO focuses its argument on interpreting the plain meaning of the language of its tax exemption in § 10–129(a) of the Economic Development Article. To the contrary, the County would have us ignore ED § 10–129(a) altogether, and instead focus on §§ 12–108 and 116 of the Tax–Property Article, which provide generally for recordation taxes. At oral argument, the County's counsel explained the County's position, stating that we should only "look at the nature of the tax, . . . look at the principles of statutory construction for [tax] exemptions, . . . look at the fact that [MEDCO's exemption is] not included in the Tax–Property Article, and those are the things [we should] consider when [we] write [our] opinion."

We reject the County's invitation to limit our study to the Tax–Property Article. This case does not concern recordation taxes generally, as the County would have us believe, but rather the case is specific to MEDCO and its tax exemption. Therefore, the heart of this case is whether ED § 10–129(a) exempts MEDCO from paying recordation tax on a deed of trust. Applying our canons of statutory interpretation, we

search for the Legislature's intent in granting MEDCO's tax exemption by examining the plain meaning of the statute as it is commonly understood. Although the plain meaning of ED § 10–129(a) is sufficient to end our inquiry, we then entertain the County's arguments based on the Tax–Property Article, and its final argument that MEDCO waived its right to claim tax-exempt status in the transaction at the heart of this matter.

### The Plain Meaning of MEDCO's Tax Exemption

 Our ultimate objective of statutory interpretation is "to ascertain and effectuate the real and actual intent of the Legislature." *McCloud v. Dep't of State Police*, 426 Md. 473, 479, 44 A.3d 993, 996 (2012) (citation and quotation marks omitted). To do so, we must "begin[ ] with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology." *Bowen v. City of Annapolis*, 402 Md. 587, 613, 937 A.2d 242, 257 (2007) (quoting *Kushell v. Dep't of Natural Res.*, 385 Md. 563, 576, 870 A.2d 186, 193 (2005)). This plain meaning should be construed "to carry out and effectuate, or aid in, the general purposes and policies" of the statute being interpreted. *Johnson v. State*, 75 Md.App. 621, 630, 542 A.2d 429, 433 (1988) (citations omitted). When reading the statute, we apply "a common sense perspective" of how the statutory language is generally understood. *Huffman v. State*, 356 Md. 622, 628, 741 A.2d 1088, 1091 (1999).

Section 10–129(a) of the Economic Development Article provides that "**Except** as provided in **subsection (b)** of this section, the **Corporation** is **exempt** from **any requirement** to pay taxes or assessments on its **properties or activities.**" (Emphasis added). MEDCO has three steps in its logic. First, it argues that the plain meaning of the term "any ... ta[x] ... on ... activit[y]" includes the recordation tax because the borrowing of money and subsequent recording of a deed of trust is an "activity." Second, in order to engage in this activity of recording the deed, MEDCO was faced with a "requirement" to pay the recordation tax. Finally, MEDCO

concludes that because this recordation tax is not listed in "subsection (b)," the plain meaning of ED § 10–129(a) expressly "exempts" MEDCO from paying the recordation tax.

■ The County disagrees, and would interpret the words "any," "activity," and "requirement" quite differently. It maintains that the word "any" in ED § 10–129(a) does not include recordation taxes, that the recording of a deed of trust is not an "activity," and that the recording of a deed of trust is not a "requirement." We examine each of the County's arguments.

### *"Any"* Includes the Recordation Tax

■ The County argues that ED § 10–129(a) was not intended to exempt MEDCO from "any" tax. In this regard, the County draws a distinction between direct taxes and excise taxes. As this Court has explained, a direct tax is a property tax, which "is a charge on the owner of property by reason of his ownership alone without regard to any use that might be made of it." *Weaver v. Prince George's County*, 281 Md. 349, 357, 379 A.2d 399, 403 (1977) (citation omitted). In contrast, an excise tax is "defined as a tax imposed upon the performance of an act, the engaging in an occupation, or the enjoyment of a privilege" which "is said to embrace every form of taxation that is not a burden directly imposed on persons or property." *Id.* at 357–58, 379 A.2d at 404 (citation and quotation marks omitted). The recordation tax at issue here is "an excise tax imposed upon the privilege of recording the deed." *Dean v. Pinder*, 312 Md. 154, 159, 538 A.2d 1184, 1187 (1988).

The County argues that exemptions from "all taxation" are generally understood to apply only to direct taxes, but not excise taxes. To support this proposition, the County cites *United States v. Wells Fargo Bank*, 485 U.S. 351, 108 S.Ct. 1179, 99 L.Ed.2d 368 (1988), and *Pittman v. Housing Authority of Baltimore City*, 180 Md. 457, 25 A.2d 466 (1942) [hereinafter *Pittman (Md.)* ]. *Wells Fargo* involved the Housing Act which authorized "state and local housing authorities to issue

tax-free obligations, termed 'Project Notes.'" 485 U.S. at 353, 108 S.Ct. at 1181. The Act then provided that the Project Notes "shall be exempt from all taxation now or hereafter imposed by the United States." *Id.* at 355, 108 S.Ct. at 1182 (citation and quotation marks omitted). The issue was whether the Project Notes were subject to estate tax, a form of excise tax. *Id.* at 354, 108 S.Ct. at 1182. The Supreme Court stated that historically, "an exemption of property from all taxation had an understood meaning: the property was exempt from direct taxation, but certain privileges of ownership, such as the right to transfer the property, could be taxed." *Id.* at 355, 108 S.Ct. at 1182. The Court explained the distinction as "between an excise tax, which is levied upon the use or transfer of property ... and a tax levied upon the property itself." *Id.* The Court then upheld imposition of the estate tax. *Id.* at 356, 108 S.Ct. at 1182.

In *Pittman (Md.)*, the issue was whether the Housing Authority was exempted from paying recordation tax when the Act provided that its property "shall be exempt from all taxes ... of the city, the State or any political subdivision thereof, provided that the authority shall pay to the city in lieu of taxes a sum for each housing project not exceeding an amount equal to the regular taxes levied upon similar property." 180 Md. at 459, 25 A.2d at 467–68 (citation and quotation marks omitted). This Court "stated as a general rule that exemptions from taxation apply primarily to annual property taxes and ordinarily do not apply to excises or taxes which are imposed ... upon the enjoyment of a privilege." *Id.* at 462, 25 A.2d at 469. "Thus an exemption from all State and local taxes would not relieve from some taxes where the intention of the Legislature to restrict the scope of the exemption can reasonably be inferred." *Id.* at 463, 25 A.2d at 469. Regarding the legislative intent, this Court concluded that "the Legislature has not conferred upon [the Housing Authority] complete immunity from taxation, but has expressly delegated ... the power to determine the sum to be paid." *Id.* at 462, 25 A.2d at 468–69. As added support, the Court reasoned that, because the state recordation tax did not exist at the

time the Housing Authority was created, such tax was not contemplated in the exemption. *Id.* at 464, 25 A.2d at 470–71.

MEDCO distinguishes both cases. It argues that *Wells Fargo* concerned an exemption of *property* from tax, and did not involve a statute which expressly exempts an *entity* from paying any tax. To illustrate the difference, MEDCO cites *Federal Land Bank v. Bismarck Lumber Co.*, which considered whether the Federal Land Bank of St. Paul was exempt from state sales tax. 314 U.S. 95, 96–98, 62 S.Ct. 1, 2–3, 86 L.Ed. 65 (1941). In that case, the statute stated, "every Federal land bank ... shall be exempt from Federal, State, municipal, and local taxation." *Id.* at 99, 62 S.Ct. at 3 (alteration in original) (citation and quotation marks omitted). The Supreme Court held that "[t]he unqualified term 'taxation' used in [the statute] clearly encompasses within its scope a sales tax." *Id.* The Court reasoned that a broad construction of the term was "indicated by Congress's intention to advance credit to farm borrowers at the lowest possible interest rate." *Id.* at 100, 62 S.Ct. at 4.

*Pittman (Md.)* is also distinguishable, argues MEDCO, because the Legislature in that case did not exempt the Housing Authority from all taxes. Rather, the statute in *Pittman (Md.)* contained an express formula for how the taxes should be calculated. Here, argues MEDCO, the language in ED § 10–129(a) clearly evidences the Legislature's intention to grant MEDCO a broad tax exemption. Focusing on the adjective "any," MEDCO cites several cases for the proposition that the term "any" connotes a "broad" and "expansive meaning," such as "every," "all," or "without restriction or limitation of choice." [1]

---

1. *See Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219, 128 S.Ct. 831, 835–36, 169 L.Ed.2d 680 (2008) ("We have previously noted that read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'") (citation and quotation marks omitted); *United States v. Gonzales*, 520 U.S. 1, 5, 117 S.Ct. 1032, 1035, 137 L.Ed.2d 132 (1997) (same); *Richmond v. State*, 326 Md. 257, 265, 604 A.2d 483, 487 (1992) ("We have previously construed the use of the word 'any' in a criminal statute to mean 'every' and to

Furthermore, argues MEDCO, even if this Court accepts the County's distinction between direct and excise taxes, the plain meaning of ED § 10–129(a) contemplates an exemption for both. As we previously explained, a direct tax is imposed on "property" and an excise tax is imposed on "the performance of an act." *See Weaver*, 281 Md. at 357–58, 379 A.2d at 403–04. In this case, ED § 10–129(a) exempts MEDCO from any tax on its "properties or activities." Therefore, argues MEDCO, the statute expressly contemplates that MEDCO is exempt from direct taxes on its properties **and** excise taxes on its activities.

We agree with MEDCO that ED § 10–129(a) does exempt it from both direct and excise taxes. It is not correct to assume, as the County does, that an exemption for "all" or "any" taxation only exempts direct taxes—not excise taxes. Instead, as we stated in *Pittman (Md.)*, we look to the statutory intent to determine the scope of the exemption. 180 Md. at 463, 25 A.2d at 469. Applying the "plain meaning" rule, it is apparent that the Legislature did not seek to so restrict the exemption in this case. The Legislature chose to use the modifier "any" unrestricted by qualifiers. *Cf. Fed. Land Bank*, 314 U.S. at 99, 62 S.Ct. at 3 ("The unqualified term 'taxation' used in [the statute] clearly encompasses within its scope a sales tax."). This modifier connotes a broad and expansive meaning which is commonly understood to mean "[o]ne, some, every, or all without specification." American Heritage Dictionary of the English Language 81 (4th ed. 2006). And, the Legislature did not stop there. It went on to expressly exempt taxes on "properties or activities." Thus, the Legislature expressly provided that MEDCO's tax-exempt status in ED § 10–129(a) includes direct taxes on its properties **and** excise taxes on its activities. As a result, ED § 10–129(a) includes an exemption from recordation taxes.

---

support a legislative intent authorizing multiple convictions."); *Brown v. State*, 311 Md. 426, 435, 535 A.2d 485, 489 (1988) ("[T]he use of the word 'any' before the phrase 'dwelling house' indicates that the Legislature intended the unit of prosecution to be each dwelling house burned.").

### *Recording of a Deed of Trust is an "Activity"*

Undaunted in its pursuit of this tax, the County maintains that, even if ED § 10–129(a) does include an exemption for excise taxes, the recording of a deed of trust was not a MEDCO "activity" to which the tax exemption applies. The County asserts that ED § 10–129(a) only provides a tax exemption to MEDCO's "properties and activities," and "does not provide a blanket exemption that would extend the exemption to transactions that do not fit within the stated categories." The County agrees that the activities that MEDCO is authorized to engage in include the borrowing of money and the securing of loans with a deed of trust. Yet, according to the County, "[t]he authority to enter into a loan transaction and to execute a deed of trust differs significantly from establishing an exemption from the recordation tax on the privilege of recording that deed of trust." In the County's view, because the statute does not expressly authorize MEDCO to record a deed of trust, such action cannot fall into the category of MEDCO's activities.

MEDCO counters that ED § 10–115(14) expressly authorizes MEDCO to "do all things necessary or convenient to carry out the powers expressly granted by this subtitle." ED § 10–115(14). In this regard, if MEDCO is expressly authorized to secure a loan with a deed of trust, it must of necessity be authorized to record that deed of trust in order to fully carry out its powers. Additionally, MEDCO relies on *Pittman v. Home Owners' Loan Corp.*, in which the Supreme Court, in determining whether Maryland recordation tax applies to a federal agency, recognized that "[b]oth the mortgage and its recordation were indispensable elements in the lending operations." 308 U.S. 21, 32, 60 S.Ct. 15, 17, 84 L.Ed. 11 (1939) [hereinafter *Pittman (S.Ct.)* ]. In MEDCO's view, the granting of a deed of trust and the recording of that deed of trust are one-and-the-same activity covered under MEDCO's tax exemption.

We agree with MEDCO that the recording of a deed of trust falls within the scope of MEDCO's activities. MEDCO is empowered to "accept loans ... from ... a private source,"

ED § 10–115(4), to "borrow money . . . to finance any part of the cost of a project . . . of the Corporation," ED § 10–117(a)(1), and to "secure the payment of any portion of the borrowing by . . . deed of trust on property . . . of the Corporation," ED § 10–117(a)(2). The Legislature then went even further, and gave MEDCO the authority to "do all things necessary or convenient to carry out the powers expressly granted by this subtitle." ED § 10–115(14). In other words, MEDCO is expressly authorized to borrow money from a private source to finance any cost of a MEDCO project, and to secure that loan with a deed of trust on MEDCO property. Then, MEDCO may do anything that is "necessary or convenient" to effectuate that loan.

In this case, it was "necessary" for MEDCO to record the deed of trust because the loan documents required MEDCO to do so, and the loan would not have closed without the recording. In other words, the granting of the deed of trust and the subsequent recording of the deed of trust were both "indispensable elements" to obtaining the financing from PNC. *See Pittman (S.Ct.)*, 308 U.S. at 32, 60 S.Ct. at 17 ("Both the mortgage and its recordation were indispensable elements in the lending operations."). The deed of trust and its recording were part of the same transaction or activity necessary to carry out MEDCO's express power to obtain financing from PNC. Therefore, the recording of a deed of trust falls within the category of MEDCO's activities to which MEDCO's tax-exempt status in ED § 10–129(a) applies.

### *Recording of a Deed of Trust is a "Requirement"*

■ A somewhat different "requirement" test is key to the County's next argument. It insists that, even if recording the deed of trust was a MEDCO activity, still the recordation taxes were not a "requirement" within the meaning of the tax exemption granted in ED § 10–129. To support this position, the County explains that "[s]tate law does not dictate that a specific party is responsible to pay the recordation tax" and cites § 12–111 of the Tax–Property Article. This section states: "By agreement, recordation tax may be paid by any person." Md.Code (2001, 2007 Repl. Vol.), TP § 12–111. In

this regard, the tax is imposed on the privilege of recording the deed of trust, and the "legal incidence of the tax . . . is not imposed on a particular party."

In the County's view, "the Legislature intended to exempt MEDCO only from taxes that it was required to pay by law— not taxes that MEDCO agreed to pay or reimburse by contract." The County supposes that the Legislature could not have "anticipated that MEDCO would enter into agreements to . . . voluntarily assume[ ] economic liability for a tax that it was not otherwise required to pay." The County views the loan transaction as complete upon the giving of the deed of trust, which would mean that PNC had the sole interest in recording the deed.

MEDCO responds by looking to the plain meaning of the word "requirement." MEDCO argues that to require something is simply to compel it. Nothing about the ordinary understanding of the word, in MEDCO's opinion, would support the County's position that "requirement" actually means "required to pay by law" in the sense urged by the County. MEDCO maintains that it was compelled to pay the recordation tax in order to comply with the loan requirements. MEDCO points out that the tax is not imposed on a particular party, but instead is imposed on the instrument being recorded. *See* Md.Code (2001, 2007 Repl. Vol.), TP § 12–102. MEDCO finds support in *Pittman (S.Ct.)*, in which the Supreme Court stated that it was immaterial that the statute was silent as to who should pay the Maryland recordation tax, because "the mortgage . . . was offered for record by the Corporation and the tax was demanded from the Corporation." 308 U.S. at 30–31, 60 S.Ct. at 17.

We agree with MEDCO that it was "required" to pay the recordation tax. This is so even though the recordation tax is not imposed on any particular person. Our decision is guided by the plain meaning of the term "requirement." Under the ordinary definition of "requirement," [2] MEDCO was required

---

**2.** The term "requirement" is generally understood to mean "Something obligatory; a prerequisite." American Heritage Dictionary at 1482.

to pay the recordation tax in two respects. First, PNC required MEDCO to pay any and all potential costs of the loan. In an initial letter of intent from PNC to MEDCO, PNC made clear that it would only offer the loan to MEDCO if MEDCO agreed to pay all initial costs associated with the loan: "In order for PNC to proceed with the credit due diligence investigation, [MEDCO] hereby agrees to pay all costs and expenses incurred by PNC, ... this expense reimbursement agreement is unconditional." And, in the attached Preliminary Term Sheet, PNC again made clear that MEDCO would be required to pay "[a]ll expenses" associated with the loan. MEDCO did not have a choice: if it did not agree to this requirement, then PNC would have refused to grant the loan.[3] In this regard, it is no bar to the exemption that MEDCO was required to pay the recordation tax based on a contractual agreement. The Tax–Property Article specifically allows the parties to agree as to who will pay the recordation tax, TP § 12–111, and it further instructs that such tax will be imposed on the instrument of writing being recorded rather than the lender or borrow specifically, TP § 12–102.

Second, the County also required MEDCO to pay the recordation tax as MEDCO was the entity from whom the tax was demanded before the deed of trust would be recorded. As we explained, the recording of the deed of trust was an "indispensable element" to the financing agreement with PNC and the loan would not have closed until MEDCO recorded

---

We see nothing in the statute warranting a departure from this plain meaning which would support the County's interpretation of "required to pay by law."

**3.** This understanding of the negotiations between PNC and MEDCO is reinforced by the testimony of John Genakos, the Business Relationship Coordinator and Systems Manager for MEDCO, at the Tax Court hearing. He testified that MEDCO was "informed that the transaction was not going to move forward unless [MEDCO] paid recordation tax on that Deed of Trust."

The Tax Court Judge appeared to understand MEDCO's limited choice in the matter, explaining that in negotiations of "who was going to pay for what, ... the banks always apply the golden rule. Them that's got the gold makes the rules...."

the deed. As Timothy Jones, the Tax Operations Manager in the Department of Finance for Montgomery County, acknowledged at the Tax Court hearing: "[MEDCO had] no choice but to pay the tax, the recordation tax, if [the County says that] it's due before the document can be recorded. . . ." Like the Supreme Court stated in *Pittman (S.Ct.)*, the party who presents the writing for recordation in Maryland, is the party who is required to pay the tax. 308 U.S. at 29–32, 60 S.Ct. at 16–17.

In sum, recording the deed of trust was one of MEDCO's activities. In order to complete the borrowing transaction that enabled it to facilitate the development of the Shady Grove Technology Development Center, MEDCO was first required to pay a recordation tax. Therefore, MEDCO was "required" to pay the recordation tax within the meaning of the exemption set forth in ED § 10–129(a).

### Plain Meaning of ED § 10–129(a)

After rejecting the County's interpretations of the words "any," "activity," and "requirement," we return to ED § 10–129(a) and read the plain meaning of the statute as a whole. ED § 10–129(a) states:

> **Except** as provided in **subsection (b)** of this section, the **Corporation** is **exempt** from **any requirement** to pay taxes or assessments on its **properties or activities.** (Emphasis added).

Reading this section, any ordinary person would understand that its plain meaning contemplates that MEDCO is exempt from paying any tax on its properties or activities except those listed in subsection (b). This reading is made clear by using the commonly understood meanings of the words used by the legislature.

This plain meaning interpretation directly "carr[ies] out and effectuate[s], or aid[s] in, the general purposes and policies" of MEDCO. *See Johnson*, 75 Md.App. at 630, 542 A.2d at 433 (citations omitted). These purposes are clear, as the Legislature listed them in the statute:

(b) *Purposes.*—The legislative purposes of [MEDCO] are to:

(1) relieve unemployment in the State;

(2) encourage the increase of business activity and commerce and a balanced economy in the State;

(3) help retain and attract business activity and commerce in the State;

(4) promote economic development; and

(5) promote the health, safety, right of gainful employment, and welfare of residents of the State.

ED § 10–104(b).

Interpreting ED § 10–129(a) to exempt MEDCO from paying recordation tax allows MEDCO to save money, helps to keep MEDCO projects affordable, and helps to make MEDCO bonds competitive and marketable to potential purchasers. That allows MEDCO to promote additional, less expensive, business development in the State, directly enhancing all five purposes for creating MEDCO. *See* ED § 10–104(b). Conversely, accepting the County's interpretation would directly hinder MEDCO from achieving its purposes, by increasing the cost of development and thereby limiting the amount of resources MEDCO has to encourage economic development in the State. It would violate our most basic rules of statutory construction to accept an interpretation that prevents a statute from achieving its purpose in place of an interpretation that directly effectuates it.

### Recordation Taxes and Exemptions Generally

■■■ Having failed to convince us that ED § 10–129(a) does not, on its face, exempt MEDCO from paying the recordation tax, the County asks us to shift our focus away from MEDCO and onto recordation taxes generally. Specifically, it argues that any claimed exemption from recordation taxes must be strictly construed in favor of the County, and that § 10–129(a) of the Economic Development Article must be harmonized with the Tax–Property Article. At the outset, we note that when "the plain language of the statute is clear and

unambiguous, the process ends and no further sleuthing of statutory interpretation is needed." *Fisher v. Eastern Corr. Inst.*, 425 Md. 699, 706–07, 43 A.3d 338, 343 (2012) (citation and quotation marks omitted). As we have explained, the plain meaning of ED § 10–129(a) calls for MEDCO's exemption from this recordation tax. Nevertheless, we will entertain the County's additional arguments for the sake of completeness, and because reliance on the Tax–Property Article was the heart of the Tax Court's decision.

### Strict vs. Liberal Construction

■■■ Citing *Comptroller of the Treasury v. Martin G. Imbach, Inc.*, the County argues that MEDCO cannot be exempt from paying the recordation tax because, when construing a tax statute, this Court must strictly construe any exemption against the taxpayer and resolve any doubt in favor of the taxing authority. 101 Md.App. 138, 144, 643 A.2d 513, 516 (1994). Under this construction, argues the County, an exemption cannot be found by "implication," and will only exist when " 'a deliberate purpose of the Legislature to grant an exemption is expressed in clear and unequivocable terms.' " *See Clarke v. Union Trust Co.*, 192 Md. 127, 134, 63 A.2d 635, 638 (1949).

Yet, as MEDCO explains, this is not a typical tax exemption statute located in the same subtitle that created the tax. Instead, we are dealing with an entirely separate statutory scheme enacted as part of the Economic Development Article. In this regard, the Legislature specifically instructed that MEDCO's entire statutory scheme, including its tax exemption, "shall be liberally construed to accomplish its purposes." ED § 10–102.

■■■ Although this Court, left to its own accord, would generally apply a strict construction to tax exemptions, in this case, the Legislature has specifically instructed us otherwise. Because it is our ultimate goal "to effectuate the legislative intent," we are bound by the Legislature's wishes. *Md. State Fair & Agric. Soc. v. Supervisor of Assessments*, 225 Md. 574,

588, 172 A.2d 132, 139 (1961). Therefore, not only is it proper for the plain-meaning interpretation of ED § 10–129(a) to exempt MEDCO from paying the recordation taxes, but we must apply a liberal construction to the statute—including the tax exemption—to accomplish MEDCO's purposes. ED § 10–102. As we explained, exempting MEDCO from paying recordation taxes is a "fair" construction, which directly "effectuate[s] the legislative intent and objectives," including the tax exemption. *Md. State Fair & Agric. Soc.*, 225 Md. at 588, 172 A.2d at 139. Therefore, we reject the County's attempt to strictly construe the tax exemption in this case.

### Interplay Between Economic Development and Tax Property Articles

The County would have us look outside the Economic Development Article for answers on how to interpret ED § 10–129(a) and invokes § § 12–108 and 116 of the Tax–Property Article. Specifically, the County argues that TP § 12–108(a)(ii)–(iii) exempts from the recordation tax an instrument of writing transferring property or granting a security interest *to* the State or state agency. Section 12–108 of the Tax–Property Article, the County continues, does not exempt instruments of writing giving a security interest *from* the State or state agency. Instead, the County states that TP § 12–116 grants each county the power to decide whether an instrument of writing transferring a security interest *from* the State or state agency should be exempt from the county's recordation tax. Pointing out that Montgomery County has not passed such a law, the County argues that the deed of trust granting a security interest *from* MEDCO to PNC cannot be exempt under these Tax–Property sections, and ED § 10–129(a) must be interpreted in that light.

MEDCO counters that ED § 10–129(a) and TP §§ 12–108 and 116 can easily be harmonized. MEDCO maintains that TP § § 12–108 and 116 do not possess a "super priority" in which "they supersede and override any other tax exemption statute contained elsewhere in the Annotated Code." Instead, MEDCO avers, TP §§ 12–108 and 116 apply only to state

agencies that do not have a specific tax exemption and necessarily do not apply to MEDCO, which is specifically and broadly exempted from taxes under ED § 10–129(a).

MEDCO then argues that, even if ED § 10–129(a) conflicts with TP §§ 12–108 and 116, MEDCO's more specific statute overrides the general provisions of the Tax–Property Article. MEDCO contends that TP §§ 12–108 and 116 provide only generic references to all State agencies, whereas ED § 10–129(a) is specific and applies only to MEDCO.

We again agree with MEDCO. Section 10–129(a) of Economic Development Article and Sections 12–108 and 116 of the Tax–Property Article can easily be harmonized by reading ED § 10–129(a) as a limited exception to the general rules set out in the Tax–Property Article. *See Md.-Nat'l Capital Park & Planning Comm'n v. Anderson*, 395 Md. 172, 183, 909 A.2d 694, 700 (2006) (explaining the desire to harmonize statutes relating to same subject matter). Sections 12–108 and 116 of the Tax–Property Article provide the general framework, under which transfers to a state agency are exempt from the recordation tax, and transfers from a state agency are not. Section 10–129(a) of the Economic Development Article, however, provides a very limited exception, allowing all instruments recorded by one, and only one, particular state agency—MEDCO—to be exempt from taxation. This interpretation harmonizes all of the statutes and serves the purposes for which they were enacted—giving MEDCO tax-exempt status (ED § 10–129(a)), and allowing the counties to choose whether to exempt transfers from other state agencies (TP § 12–116).

 Alternatively, even if this interpretation were read to bring the statutes into conflict, it is well established that the more specific statute will override the more general statute. *See Magnetti v. Univ. of Md.*, 402 Md. 548, 567, 937 A.2d 219, 230 (2007) (explaining that the specific statute is controlling and the general statute is overruled to the extent of the inconsistency). In this case, ED § 10–129(a) is the more specific statute, and therefore, MEDCO's tax exemption will

create a limited exception which overrides the general provisions of TP §§ 12–108 and 116. *See id.*

### MEDCO Did Not Waive Its Tax–Exempt Status

▪ Finally, the County argues that "MEDCO affirmatively waived [its] exemption by entering into a contract with PNC Bank and agreeing to pay the tax." In the County's view, agreeing to pay the tax is an acknowledgment "that the bank has the responsibility for the expense of recording the deed of trust," and that this is then a waiver of the tax-exempt status. We are not persuaded.

▪ A waiver requires a "voluntary relinquishment of a known right." *Dietz v. Dietz*, 351 Md. 683, 688, 720 A.2d 298, 301 (1998). By agreeing to pay any potential cost of recording—which the law explicitly permits MEDCO to do—MEDCO did not voluntarily relinquish its tax-exempt status. As we explained, PNC gave MEDCO no choice—MEDCO either agreed to pay all costs or PNC would refuse to grant the loan. From the time of filing till now, MEDCO has consistently and without reservation claimed to be exempt from the recordation tax.[4] At no time did MEDCO ever voluntarily relinquish that right. Rather, MEDCO simply agreed to pay the tax if MEDCO is found not to be exempt and a tax is due.

The County's so-called "waiver" argument is simply a rephrasing of the County's previous argument that MEDCO was not "required" to pay the tax but instead agreed to pay it by contract. We reject this reincarnation, as we did the original version.

---

4. This includes at least seven instances in which MEDCO claimed its tax-exempt status in this case—including (1) at the recording of the deed, (2) in its Transfer/Recordation Tax Refund Claim, (3) at the Montgomery County Department of Finance administrative hearing, (4) before the Maryland Tax Court, (5) before the Circuit Court for Montgomery County, (6) before the Court of Special Appeals, and (7) before the Court of Appeals. Additionally, Genakos testified at the hearing before the Tax Court that at the time of agreeing to the loan with PNC, MEDCO believed "that the Deed of Trust [it was] about to sign was exempt from recordation tax."

## CONCLUSION

We hold that, based on the plain language of ED § 10–129(a), the Legislature intended to exempt MEDCO from paying the recordation tax at issue in this case. This interpretation furthers the purposes for creating MEDCO, and examination of the Tax–Property Article does not dictate otherwise.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED WITH DIRECTIONS TO AFFIRM THE JUDGEMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY; COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY MONTGOMERY COUNTY.**

BELL, C.J., dissents.

BELL, C.J., dissenting.

I agree with the views collectively expressed by the Maryland Tax Court and by the Court of Special Appeals. *See Montgomery Co. v. Maryland Economic Dev. Corp.*, 204 Md.App. 282, 40 A.3d 1066 (2012). Accordingly, I dissent.